

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DARON SEYMOUR-REED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 1:16-cv-1933 |
| v. ) | |
| ) | Hon. Charles R. Norgle |
| FOREST PRESERVE DISTRICT OF ) | |
| DUPAGE COUNTY, ) | |
| ) | |
| Defendant. ) | |

## OPINION

Plaintiff Daron Seymour-Reed ("Plaintiff") brings this lawsuit against Defendant Forest Preserve District of DuPage County ("Defendant") seeking damages for his allegedly racially motivated and illegal termination. Before the Court is Defendant's motion for summary judgment brought pursuant to Federal Rule of Civil Procedure 56. For the following reasons, Defendant's motion is granted.

## BACKGROUND[1]

Plaintiff began working for Defendant in June, 2009 and later worked in the Finance Department as a Senior Account Clerk. Plaintiff's duties included "'Process[ing] invoices, contracts, and requisitions for payment,' 'Process[ing]...petty cash requests for payment,' and 'Perform[ing] other duties as assigned.'" Def.'s Local R. 56.1 Stmt. of Undisputed Material Facts, ¶ 2 (quoting, Ex. 2, Job Description) (hereinafter, "CM-ECF No.: 71-2"). His position required interpersonal skills in order to deal effectively with other employees. Moreover, Plaintiff's conduct was governed by Defendant's Personnel Policy Manuel, an Ethics Policy, and a Finance Department policy addressing personal cell phone usage.

---

[1] The Court takes the undisputed facts from the parties' Local Rule 56.1 statements.

1

During the years of his employment, Plaintiff made two complaints about, what he perceived as, racially motivated statements by his co-workers. On June 2, 2011, Plaintiff complained that a co-worker used the term "whip" which drew parallels in his mind to slavery and was therefore offensive, despite not being directed at him. On March 1, 2013, Plaintiff's co-worker asked what kind of chicken he had for lunch; Plaintiff believed that:

> "You know, being black it's offensive to be thought of as a person, you know, you only eat chicken, especially during what I think people understand as a time when there are some cultures, some religions, you know, during this time specifically tomorrow – my wife is Catholic. She is not going to have a meat dish tomorrow. So even though I'm not Catholic myself, you know. I understand it's a religious holiday. Immediately, it's offensive to me to hear that especially in the setting of the time it took place."

CM-ECF No.: 71-2. ¶ 27 (quoting, Ex. 1, Reed Dep. at 67:12-22). Both complaints led to human resources investigations, neither of which resulted in a finding of racially motivated behavior. After each incident, Plaintiff was informed that he should contact Human Resources in the event that any other harassing, discriminatory, or retaliatory conduct should occur. Plaintiff made no other complaints to the Human Resources department after the March 1, 2013 incident.

From June 5, 2013 through Plaintiff's termination he met with supervisors and human resources officials for a number of reasons. On August 8, 2014, Plaintiff was suspended for a half-day due to his insubordinate behavior toward his supervisor and inappropriate and excessive cellular phone usage during mandatory training. On September 8, 2014, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") alleging race discrimination and retaliation by Defendant. On September 15, 2014, the EEOC issued a Dismissal and Notice of Rights.

On December 19, 2014, Plaintiff was again suspended, this time as a result of raising his voice and behaving inappropriately when talking with his supervisor about an accounting

mistake discovered on December 17, 2014. Following a Human Resources investigation into the December 17, 2014 incident, Plaintiff was terminated on January 5, 2015. Defendant informed Plaintiff that he was being terminated because of performance problems, unprofessional and insubordinate behavior, and unethical conduct.

Following his termination, on January 26 2014, Plaintiff filed a second claim of race discrimination and retaliation with the EEOC. That same day, Plaintiff filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR") alleging race discrimination and retaliation. On December 8, 2015, the IDHR issued a Notice of Dismissal for Lack of Substantial Evidence. Plaintiff filed a Charge of Discrimination, no.: 2015CF2187, with the IDHR on February 8, 2015, and on October 29, 2015, the IDHR dismissed the charge for lack of substantial evidence. Thereafter, Plaintiff requested that the EEOC investigate Charge 2015CF2187, and on March 23, 2016, the EEOC adopted the IDHR's findings and issued a Notice of Right to Sue.

On April 4, 2016, Plaintiff filed his First Amended Complaint alleging: (I) Race Discrimination in violation of 42 U.S.C. § 1981; (II) Discrimination in violation of the Illinois Human Rights Act ("IHRA"); (III) Gender Discrimination in violation of 42 U.S.C. § 2000e-2(a); and (IV) Retaliation in violation of 42 U.S.C. § 1981, the Illinois Human Rights Act, and 42 U.S.C. § 2000e-2. On July 19, 2016, the Court granted Defendant's motion to dismiss Count I and Count IV(A). Now before the Court is Defendant's motion for summary judgment, brought pursuant to Rule 56, on Counts II, III, and IV(B) and (C).

## ANALYSIS

**Summary Judgment Standard**

"Summary judgment is appropriate if there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law." Dunderdale v. United Airlines, Inc., 807 F.3d 849, 853 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Wells v. Coker, 707 F.3d 756, 760 (7th Cir. 2013) (internal quotation marks and citation omitted). The Court views the evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party. Id. The Court does not "assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence." Stokes v. Bd. of Educ. of the City of Chi., 599 F.3d 617, 619 (7th Cir. 2010).

But before the nonmoving party "can benefit from a favorable view of evidence, he must first actually place evidence before the courts." Montgomery v. Am. Airlines, Inc., 626 F.3d 382, 389 (7th Cir. 2010). Simply showing that there is "some metaphysical doubt as to the material facts" will not defeat a motion for summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted); see also Argyropoulos v. City of Alton, 539 F.3d 724, 732 (7th Cir. 2008). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**Discrimination Standard**

Section 703(a)(1) of the Civil Rights Act of 1964 makes it unlawful for an employer to discharge an employee on the basis of sex. 42 U.S.C. § 2000e-2(a). The legal standard "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." Ortiz v. Werner Enterprises, Inc., 834 F.3d 760, 765 (7th Cir. 2016).

In order to establish a *prima facia* case of sex discrimination, the Plaintiff bears the burden of initially establishing: "that '(1) [he] is a member of a protected class, (2) [he] performed reasonably on the job in accord with [his] employer['s] legitimate expectations, (3) despite [his] reasonable performance, [he] was subjected to an adverse employment action, and (4) similarly situated employees outside of [his] protected class were treated more favorably by the employer.'" David v. Bd. of Trustees of Community College Dist. No. 508, 846 F.3d 216, 225 (7th Cir. 2017) (quoting Andrews v. CBOCS West, Inc., 743 F.3d 230, 234 (7th Cir. 2014), overruled on other grounds by Ortiz, 834 F.3d at 765.).

In some instances "the employer's job expectations themselves may be tainted with discrimination." Pantoja v. American NTN Bearing Mfg. Corp., 495 F.3d 840, 846 (7th Cir. 2007). Therefore, "[w]hen a plaintiff produces evidence sufficient to raise an inference that an employer applied its legitimate employment expectations in a disparate manner[], the second and fourth prongs of *McDonnell Douglas* merge-allowing the plaintiff to establish a *prima facie* case, stave off summary judgment for the time being, and proceed to the pretext inquiry." Id. at 846 (emphasis in original) (quoting Peele v. Country Mutual Insurance Co., 288 F.3d 319, 329-330 (7th Cir.2002); citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). Accordingly, to prevail, the Plaintiff must produce "some evidence to raise the inference of discriminatory expectations." Id. at 846.

5

Moreover, "[t]he analytical framework for [claims brought pursuant to the Civil Rights Act of 1964 and the IHRA are] essentially identical[.]" Bagwe v. Sedgwick Claims Mgmt. Services., Inc., 811 F.3d 866, 879 (7th Cir. 2016), cert. denied, 137 S. Ct. 82 (2016) (overruled on other grounds by Ortiz, 834 F.3d at 765) (citing Moultrie v. Penn Aluminum Int'l, LLC, 766 F.3d 747, 754 (7th Cir.2014) (resolving a Title VII and IHRA claim at the same time.); Brown v. Advocate S. Suburban Hosp., 700 F.3d 1101, 1104 n. 1 (7th Cir. 2012) (discussing Title VII and § 1981); and Zaderaka v. Illinois Human Rights Comm'n, 545 N.E.2d 684, 687 (Ill. Sup. Ct. 1989) (discussing Title VII and the IHRA)).

Because the IHRA claim, Count II, and the Title VII claim, Count III, share the same analytical framework, the Court will address both Counts simultaneously.

<u>Because Plaintiff Cannot Raise an Inference that Defendant Applied Its Legitimate Expectations in a Disparate Manner, the McDonnell Douglas Framework Applies</u>

Here, Plaintiff argues in favor of applying the less stringent merged framework to his claims. Plaintiff argues that Defendant applied its legitimate expectations in a disparate fashion, and as a result, Defendant used those reasons as pretext for firing Plaintiff to cover its race and gender discrimination. In support of this approach, Plaintiff argues that the record is "replete with evidence that Plaintiff did meet Defendant's legitimate performance expectations, as evidenced by his performance appraisals." Pl.'s Memo. in Resp. Def.'s Mot for Summ. J. 5 (hereinafter, "CM-ECF No.: 82"). However, the Court disagrees.

While the Court views the evidence in favor of the nonmoving party—the Plaintiff—he must first put the evidence before the Court, which the Plaintiff has not done. The evidence Plaintiff refers to above cites to his Statements of Undisputed Material Fact, CM-ECF No.: 83, submitted pursuant to Local Rule 56.1. The "fact" cited is Plaintiff's performance evaluation for the 2013 calendar year. That evaluation describes Plaintiff as an employee who "[met]

6

[e]xpectations" for each of the four performance categories and was conducted by Jan Schroeder, Plaintiff's supervisor. Although this tends to support Plaintiff's argument that he was an adequate employee, Plaintiff's argument is undermined by the lack of support for his allegation of discrimination.

In support of his allegations of discrimination, Plaintiff has not put any evidence before the Court. Plaintiff claims he was terminated because he is an African American and male but, the only evidence to support these claims are bald conclusions. During his deposition, Plaintiff was asked is there was supporting documentation, witnesses, or other evidence to support his claim of sex discrimination Plaintiff responded, "No." CM-ECF No.: 71-2. ¶ 27 (quoting, Ex. 1, Reed Dep. at 97:6-15). Further, in support of his claim of race discrimination in violation of the IHRA, Plaintiff failed to present any evidence in support of his claim. Instead, Plaintiff presents the Court with the conclusory statement that: because he was the only African American or male in his department, those classifications must have been the basis for his termination.

In order to be evaluated under the less stringent framework articulated in Pantoja, Plaintiff must first "*produce[] evidence* sufficient to raise an inference that an employer applied its legitimate expectations in a disparate manner[.]" Montgomery v. Am. Airlines, Inc., 626 F.3d 382, 394 (7th Cir. 2010) (emphasis in original) (quoting Elkhatib v. Dunkin Donuts, Inc., 493 F.3d 827, 831 (7th Cir. 2007)). Here, like in Montgomery, Plaintiff does not produce any evidence aside from his own conclusory deposition testimony in support of either allegation. "[Plaintiff] may not put the pretext cart before the prima facie horse by substituting allegations for proof." Id. at 394 (internal citations and quotations omitted). Accordingly, because Plaintiff does not support his allegations with actual evidence of disparate application, his claims cannot be evaluated under the less stringent, merged framework.

7

Plaintiff Fails to State a *Prima Facia* Case for Discrimination in Violation of Title VII or the Illinois Human Rights Act

It is undisputed that Plaintiff is a member of protected classes, African America and male, and that he was subjected to an adverse employment action, when he was terminated. However, Plaintiff cannot establish the second or fourth prong of the McDonnell Douglas framework because, again, Plaintiff has not put any evidence that tends to support his position before the Court. To present a *prima facia* case of discrimination, Plaintiff must show that he met Defendant's legitimate employment expectations and that similarly situated employees outside of his protected class were treated better. He cannot satisfy either of these elements.

First, in support of his argument that he satisfied Defendant's employment expectations, Plaintiff relies on his 2013 Non-Exempt Administration/Clerical Performance Evaluation. See CM-ECF No.: 82, Ex. E. This employee evaluation was for the 2013 calendar year and was conducted by Jan Schroeder. In his employment evaluation, Plaintiff was deemed to "Meet Expectations" in each of the four Job Knowledge/Skills categories and catch of the three Work Quality/Accuracy categories. However, Plaintiff's contention that he met his Defendant's expectations is belied by his 2014 Non-Exempt Administration/Clerical Performance Evaluation. See CM-ECF No.: 82, Ex. F. On his 2014 evaluation, Plaintiff was as rated as "Does Not Meet Expectations" in two of the four Job Knowledge/Skills categories: Follows work procedures/policies and Performs a variety of activities/projects independently. Plaintiff's evaluation also noted that: "Daron was asked to participate in discussions regarding strategic planning fot [sic] the District. Our outside vendor reported back to Director Hogan that Daron did not participate in discussion and was observe [sic] texting and viewing his phone during the session." CM-ECF No.: 82, Ex. F. These evaluations taken together show that while Plaintiff may have originally met Defendant's employment expectations, by the time he was terminated

he no longer did. Accordingly, Plaintiff cannot satisfy the second prong necessary to state a *prima facia* case of sex discrimination.

While failure to establish any of the four prongs of the McDonnell Douglas framework is enough to undermine Plaintiff's Counts II and III, Plaintiff also fails to show similarly situated employees outside of his protected class were treated better. Plaintiff argues that other employees within the Finance Department raised their voice at their supervisors, spent time on their cell phone, and frequently held informal personal discussions at the water cooler. However, when asked, Plaintiff was not able to point to a single instance where his co-workers were either using electronic devices in violation of the Finance Department policy addressing personal cell phone usage or where his co-workers behaved contemptuously.

Because Plaintiff has not produced any evidence, save his own conclusory deposition testimony, to state a *prima facia* case of discrimination in violation of either Title VII or the IHRA, the Court finds that Plaintiff was not terminated because of his race or gender. Because there is no genuine issue of material fact such that a jury could return a verdict in favor of Plaintiff, the Court enters judgment on Counts II and III for Defendant.

<u>Plaintiff is Unable to Show a Causal Link Between his EEOC Charge of Discrimination and his Termination</u>

Next the Court turns to Plaintiff's Count IV, retaliatory termination in violation of the Illinois Human Rights Act, and 42 U.S.C. § 2000e-2. "To succeed on a Title VII retaliation claim, plaintiffs must 'present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two.'" Volling v. Kurtz Paramedic Servs., Inc., 840 F.3d 378, 383 (7th Cir. 2016) (citing Turner v. The Saloon, Ltd., 595 F.3d 679, 687 (7th Cir. 2010)). Again, "[t]he analytical framework for [claims brought

9

pursuant to the Civil Rights Act of 1964 and the IHRA are] essentially identical[.]" Bagwe, 811 F.3d at 879.

It is undisputed that Plaintiff engaged in protected activity by filing two formal complaints to Human Resources, and that Defendants took an adverse employment action against Plaintiff by terminating him. Therefore, this claim turns on the third element: the causal link between the two.

To show a causal link, Plaintiff relies on allegations above, namely that similarly situated employees outside of his protected class were treated better. However, as the Court stated above, Plaintiff relies on his own self-serving, bald, and conclusory statements that his co-workers were treated better and that they were treated better because of their race and gender. Because Plaintiff has not produced any supporting evidence, save his own conclusory deposition testimony, he fails to establish the causal link prong.

Additionally, Plaintiff argues that because he received positive employee evaluations for the 2013 calendar year, there was no basis for Defendant's determination that Plaintiff performed poorly. However, the temporal connection is attenuated at best. See Turner v. The Saloon, Ltd., 595 F.3d 679, 687–90 (7th Cir. 2010) (analyzing the temporal aspect of a causal connection and finding that as time progresses there must be something more to create a causal link).

Daron Seymour-Reed has not established a causal link between his termination and the protected activity in which he engaged because the last protected activity took place over a year before his termination. Accordingly, Plaintiff has not stated a *prima facia* case for retaliatory termination under either Title VII or the IHRA. Because there is no genuine issue of material fact such that a jury could return a verdict in favor of Plaintiff, the Court enters judgment on Count IV for Defendant.

## CONCLUSION

For the foregoing reasons, summary judgment is granted in favor of Defendant on Counts II and III for the alleged race discrimination in violation of the Illinois Human Rights Act and gender discrimination in violation of Title VII. Summary judgment is also granted in favor of Defendant on Count IV for the alleged retaliatory termination in violation of the same.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: November 19, 2017

RECEIVED-EOA
17 NOV 20 AM 8:35
CLERK
U.S. DISTRICT COURT